***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Houser and the briefs and oral arguments before the Full Commission. The appealing parties have not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Houser with modifications.
 *********** *Page 2 
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as: STIPULATIONS
1. On all relevant dates, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. On all relevant dates, an employee-employer relationship existed between the plaintiff and defendant-employer.
3. The carrier liable on the risk is correctly named above.
4. On all relevant dates, the plaintiff average weekly wage was sufficient to yield the maximum compensation rate for 2004, which is $688.00.
5. At the hearing before the Deputy Commissioner, the parties submitted the following:
 a. A Packet of Medical Records, which was admitted into the record, and marked as Stipulated Exhibit (2), and;
 b. A Packet of Industrial Commission Filings and Discovery Responses, which was admitted into the record and marked as Stipulated Exhibit (3). 6. The issues to be determined by the Commission are as follows: a. Whether the plaintiff sustained a compensable injury by accident on or about February 11, 2004 and, if so, to what indemnity or medical compensation, ongoing or otherwise, if any, is he entitled;
 b. Whether the plaintiff is entitled to ongoing medical treatment provided for by defendants; and *Page 3 
 c. Whether the plaintiff is entitled to the award of attorney's fees pursuant to N.C. Gen. Stat. § 97-88.1 and Industrial Commission Rule 802.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. As of the date of hearing before the Deputy Commissioner, the plaintiff was fifty-nine years old, with his date of birth being June 22, 1946. The plaintiff is a high school graduate and attended Kent State University for one-half year.
2. As of February 11, 2004, the plaintiff had been employed by the defendant-employer for thirty-four years with his then-present job being a mold changer, bladder changer, and PCI changer. On that date, the plaintiff testified that his section was ahead of production and that the plant was due to be visited by corporate executives. Because of this pending visit, a decision was made to upgrade the facility by painting beams and guardrails. The plaintiff and a co-worker were assigned to paint his section.
3. Due to environmental factors in the plaintiff's work area, the paint was mixed with a compound called E-Z Japan Drier so that the paint would dry more quickly. On February 11, 2004, after mixing the paint and drying substance, the plaintiff testified that he was painting an overhead beam in the mold prep area when he began to feel dizzy. Due to this dizziness, the plaintiff then took an approximately twenty minute break in another area. After his break, the plaintiff asserts that he was painting the lower end of the beam and that the paint can was about six to seven inches from his nose. The plaintiff then needed to paint at a higher point on the beam and testified that he used an eight-inch stepstool, dipped his brush into the *Page 4 
paint can, stood on the stool, and began to paint. Next, the plaintiff asserts that he again began to feel dizzy just prior to everything going black. The plaintiff then fell, striking his head on the concrete floor.
4. According to the plaintiff, due to the cold weather, the doors in the area in which he was painting on February 11, 2004, were closed and the fans were not operating. The plaintiff further asserts that despite high ceilings, the area in which he was painting had poor ventilation. The plaintiff's testimony regarding his fall and his work area was corroborated by the testimony of Mr. Roy Hansen, a coworker. Mr. Hansen testified the area in which he and the plaintiff were present had poor ventilation and that on the day in question, he observed the plaintiff painting on a stool and then falling backwards with his eyes closed. Mr. Hanson further testified that the plaintiff's head, neck, and back hit the concrete floor, and that the plaintiff was unconscious for approximately four minutes.
5. Mr. Luther Oxendine is the safety, health and security manager for the defendant-employer and is responsible for OSHA program compliance. Mr. Oxendine also is responsible for maintaining Material Safety Data Sheets (MSDS) for substances used in the plant. According to Mr. Oxendine, the MSDS for the drying accelerant used by the plaintiff could cause irritation of the eyes, nose, and throat as well as dizziness if inhaled. As for the work area in which the plaintiff was painting, Mr. Oxendine described it as "a wide open area" that had fans and a large door which was generally kept open.
6. Based upon the corroborative testimony of Mr. Hanson, the testimony regarding the circumstances of his fall and the lack of ventilation in the area in which he was working on that day is given more weight than the testimony of Mr. Oxendine. *Page 5 
7. Due to his injuries, the plaintiff does not recall in detail many of the events immediately subsequent to regaining consciousness. The plaintiff was initially transported to the plant's dispensary and then via ambulance to Cape Fear Valley Medical Center. At that facility, the plaintiff was initially diagnosed as having experienced a syncope, or fainting episode, and was admitted due to not being able to sit up without becoming dizzy. Following additional diagnostic tests, the plaintiff was discharged on February 13, 2004, with a diagnosis of vasovagal syncope and post concussion syndrome. The plaintiff was also referred to Dr. Thor Klang, an expert in cardiology, and was medically excused from work.
8. Dr. Klang initially examined the plaintiff on February 19, 2004 to determine whether any cardiac problems may have caused his fall at work. Following diagnostic tests, Dr. Klang opined that the plaintiff's fall was not caused by any cardiac issues or by any of his medications. Dr. Klang further opined that his being overcome by paint fumes caused the plaintiff's fainting episode.
9. On March 1, 2004, the plaintiff returned to work for defendant-employer in his regular job, and at his pre-injury wages. Subsequent to his return to work, the plaintiff asserts that he experienced increasing difficulties with remembering names, directions, and how to perform normal daily tasks. Mr. Hanson testified that the plaintiff had to double check himself while performing his work duties. Also subsequent to his return to work, the plaintiff continued to report experiencing symptoms, including memory loss, to his family physician, Dr. Albert Chao. Because of these ongoing symptoms, Dr. Chao referred the plaintiff to Dr. Muhammed Khasru, an expert in neurology and who had examined the plaintiff while he was hospitalized in February 2004. *Page 6 
10. On July 28, 2004, the plaintiff was examined by Dr. Khasru. Following initial diagnostic tests, Dr. Khasru diagnosed the plaintiff as having post concussion syndrome with memory loss. Over the period of his treatment with Dr. Khasru, the plaintiff continued to report memory problems as well as periodic episodes of confusion and the inability to read or write. Also during this treatment period, Dr. Khasru consistently was unable to document an objective cause for the plaintiff's cognitive problems. Additionally, Dr. Khasru was could not definitively link the plaintiff's fall to chemical exposure.
11. As part of his overall treatment of the plaintiff, Dr. Khasru referred him to Dr. Elizabeth Gamboa, a neuropsychologist. Dr. Gamboa first examined the plaintiff on March 1, 2005, at which time the plaintiff reported experiencing memory problems that he attributed to his fall at work. Dr. Gamboa conducted multiple diagnostic tests, the results of which revealed the plaintiff's memory to be in the normal range for his age. On the issue of causation, Dr. Gamboa testified that the plaintiff has a variety of medical conditions that can lead to cognitive difficulties, including high blood pressure, high cholesterol, and migraine headaches. As for plaintiff's fall at work, Dr. Gamboa testified that she was unable to identify any residual cognitive problems and that the plaintiff should not have sustained any such problems from such a mild traumatic brain injury. Regarding the cause of the plaintiff's fall on February 11, 2004, Dr. Gamboa was unable to opine with a reasonable degree of medical certainty whether the plaintiff syncope was caused by chemical exposure.
12. Dr. Klang, who gave a positive causation opinion regarding the cause of the plaintiff's fall, expressed no opinion as to whether the fall caused the plaintiff's memory problems. *Page 7 
13. The plaintiff has also sought treatment from Dr. Charles Matthews, a specialist in adult neurology. Dr. Matthews first examined the plaintiff on March 13, 2006, and recommended that he undergo an electroencephalogram and an MRI. The results of the MRI revealed significant changes suggestive of small-vessel disease. Based upon these diagnostic tests, Dr. Matthews prescribed Depakote, which provided the plaintiff with some relief for his periods of confusion. Dr. Matthews has opined that following his syncope episode on February 11, 2004, the plaintiff developed post concussion epilepsy, which was the cause of his cognitive problems, and which was ultimately related to both his concussion and his pre-existing vascular disease. It should be noted that Dr. Matthews rendered this causation opinion while not having reviewed the results of the battery of memory tests the plaintiff underwent with Dr. Gamboa.
14. The circumstances of the plaintiff's fall following his exposure to chemical fumes in paint at work on February 11, 2004, constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences. Although Dr. Khasru and Dr. Gamboa were unable to give causation opinions regarding plaintiff's fall, the Full Commission gives greater weight to the opinions of Dr. Klang and Dr. Matthews were each of the opinion that the plaintiff's exposure to the chemical fumes in the paint caused the plaintiff's fainting episode. Moreover, Dr. Klang, a cardiologist, is accepted by the Full Commission as qualified in rendering an expert opinion as to whether exposure to chemical fumes, such as in the paint plaintiff was using, could cause the vasovagal syncope that led to plaintiff's fall.
15. Based on the totality of the evidence of record, the Full Commission finds that the plaintiff sustained an injury by accident arising out of and in the course of his employment with the defendant-employer on February 11, 2004. *Page 8 
16. The medical evidence of record establishes that the plaintiff, as a result of his February 11, 2004 injury by accident, was unable to earn any wages in any employment for the period of February 12, 2004, through February 29, 2004.
17. There is insufficient evidence of record upon which to find that the plaintiff's cognitive difficulties were the direct and natural result of or causally related to his February 11, 2004 injury by accident.
18. Defendants' actions in, and defense of, this case were not unreasonable.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. The plaintiff sustained an injury by accident arising out of and in the course of his employment with defendant-employer on February 11, 2004. N.C. Gen. Stat. § 97-2(6). The circumstances of the plaintiff's fall following his exposure to chemical fumes from paint at work on February 11, 2004, constituted an interruption of his regular work routine and the introduction thereby of unusual conditions likely to result in unexpected consequences and, thus, constitute an injury by accident. Harding v. Thomas Howard Co., 256 N.C. 427, 124 S.E.2d 109
(1962).
2. There is insufficient evidence of record upon which to conclude that the plaintiff's cognitive difficulties were the direct and natural result of or causally related to his February 11, 2004 injury by accident. N.C. Gen. Stat. § 97-2(6).
3. The plaintiff is entitled to receive total disability compensation at the weekly rate of $688.00 from February 12, 2004, through February 29, 2004. N.C. Gen. Stat. § 97-29. *Page 9 
4 The plaintiff is entitled to have defendants pay for all related medical expenses incurred or to be incurred, with the exception of treatment for the plaintiff's non-related cognitive problems. N.C. Gen. Stat. §§ 97-2(19); 97-25; and 97-25.1.
5. Because defendants' actions in, and defense of, this case was reasonable, no award of sanctions in the form of attorney's fees or otherwise is warranted. N.C. Gen. Stat. § 97-88.1; Industrial Commission Rule 802.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. The defendants shall pay to the plaintiff temporary total disability compensation at the weekly rate of $688.00 from February 12, 2004, through February 29, 2004, subject to the attorney's fee provided herein. Having accrued, this compensation shall be paid to the plaintiff in a lump sum.
2. The defendants shall pay for all related medical expenses incurred or to be incurred by the plaintiff as the result of his February 11, 2004 injury by accident. The defendants are not responsible for medical treatment for the plaintiff's non-related cognitive problems.
3. The defendants shall pay directly to the plaintiff's counsel a reasonable attorney's fee of twenty-five percent (25%) of the compensation awarded to the plaintiff herein. Because this fee is based upon compensation that has accrued, the defendants shall pay the plaintiff's counsel in a lump sum.
 4. The defendants shall pay the costs. *Page 10 
This 16th day of April 2007.
S/____________________ CHRISTOPHER SCOTT COMMISSIONER.
CONCURRING:
 S/____________________ BUCK LATTIMORE CHAIRMAN
 S/____________________ LAURA KRANIFELD MAVRETIC COMMISSIONER *Page 1